Dear Dr. Hebert:
You have requested an Attorney General's Opinion from our office pertaining to the funds McNeese State University receives for students who have been awarded a Pell Grant. In a letter from Bill Childs he has indicated that he is the owner of Childs University Bookstores Copy Express located in Lake Charles, Louisiana, and he competes with the University Bookstore located on campus.
Mr. Childs contends that the voucher system used by McNeese in the distribution of the Pell Grant funds to the students is depriving his company of sales, because most Pell Grant Students are buying their books with their vouchers at the University Bookstore. In addition, Mr. Childs claims that McNeese is using this system to obtain a monopoly on book sales.
Mr. Childs has asked this office to issue an opinion, requiring McNeese University to change its procedure of dispensing Pell Grant funds to students. He has offered two alternative procedures to resolve the problem:
 (1) to require McNeese to issue checks to students for their Pell Grant funds at the same time that they would receive the vouchers;
(2) to allow the students to use the vouchers at your bookstore.
We must first review the federal regulations pertaining to Pell Grants. As provided for in 20 U.S.C.A. § 1070(a)(2), payments of funds given to a student pursuant to a Pell Grant can be given directly to the students in advance of the beginning of an academic term, in an amount in which he or she is eligible in cases where the eligible institution elects not to participate in the disbursement system as provided for in20 U.S.C.A. § 1070(a)(1). It is evident that McNeese University opted to participate in the disbursement of the Pell Grants to its students.
The federal regulations stipulating the proper method of disbursal of Pell Grant funds are found in 34 C.F.R. § 690.78, which provides in pertinent part:
 (a)(1) The institution may pay a student directly by check or crediting his or her institutional account.
As per a telephone conversation with Taina Savoit, Assistant Director of the Financial Aid Office at McNeese State University, McNeese uses the voucher system as the means of crediting a student's account with the university. There is nothing in the federal regulations that forbids a university from utilizing vouchers for this purpose.
However, the system must be consistent with the following federal regulations found in 34 C.F.R. § 690.78 a(2) and a(3):
 (2) Unless a student has agreed otherwise, the amount an institution may credit to a student's account may not exceed the amount the student is required to pay the institution for —
(i) Tuition and fees;
 (ii) Board, if the student contracts with the institution for board; and
 (iii) housing, if the student contracts with the institution for housing.
 (3) An institution may not require a student to grant permission to credit his or her[e] account for the costs of other goods and services the institution provides to the student.
McNeese issues vouchers to the eligible students in the total amount that each student has been awarded in Pell Grant funds. The student is then given the option to use these vouchers to credit his/her account for tuition, fees, room, board, books, or supplies or to obtain cash at a later date. It is the individual student who decides whether to use the vouchers for "goods and services" the institution provides to the student. Thus, the amount credited to the student's account is done with his or her approval, in full compliance with the above federal regulations.
Mr. Childs has suggested two alternative procedures to the problem he is experiencing. The first procedure would require McNeese University to issue checks to students for their Pell Grant funds at the same time they would receive the vouchers.34 C.F.R. § 690.76 deals with frequency of payment.
Part (a) states:
 "[I]n each payment period, an institution may pay a student at such times and in such installments as it determines will best meet the student's needs."
Part (b) provides:
 "[T]he institutions may pay funds due a student for any completed period in one lump sum. The student's enrollment status must be determined according to work already completed." (Underlining is our own emphasis).
Therefore, the discretionary word "may" is used in the Rule. Unless McNeese University would select to issue checks to the students who are recipients of Pell Grants, the law does not mandate them to do so.
Furthermore, as previously stated, federal law gives universities the option of crediting a student's account or issuing a check to its students in the amount of their Pell Grant funds. McNeese has exercised its option and has chosen to issue vouchers to its students at the beginning of the semester and to issue checks at a later date to those students who do not choose to spend the full voucher amount. These checks are often issued one month into the semester to allow time for proper accounting.
Because this voucher system is in full compliance with federal regulations, McNeese cannot be required to issue checks to its students at the beginning of each payment period. Mr. Childs' second suggestion for an alternative procedure is to allow the student to use the vouchers at your bookstore.
The voucher system is a means of crediting a student's account with the university. Allowing students to use their vouchers at businesses other than the University is inconsistent with the purpose of the voucher system. Therefore, McNeese cannot be required to allow Pell Grant students to use their vouchers at businesses not owned by the University.
Although the procedure used by McNeese University for distribution of Pell Grant funds to recipients may cause a hardship on Childs University Bookstores, Copy Express, it appears that McNeese State University is in compliance with federal regulations. Therefore, as requested in the letter from Mr. Childs, the Attorney General's Office declines to advise McNeese to change their current procedure of administering such funds.
I hope this opinion has sufficiently addressed your concerns. If I can be of further assistance, please let me know.
Sincerely,
 RICHARD P. IEYOUB Attorney General
 BY: BETH A. CONRAD Assistant Attorney General
RPI/BAC:pab 0128p